## CAMPBELL v. PULLMAN PALACE-CAR CO.

*(Circuit Court, N. D. Iowa, W. D. May 9, 1890.)*

1. SLEEPING-CAR COMPANIES—ASSAULT BY EMPLOYE—LIABILITY OF COMPANY.
   The Pullman Palace-Car Company is liable for injuries sustained by occupants of its sleeping-cars through the negligence or willful misconduct of the employe whom it places in charge of the car.

2. SAME—DAMAGES.
   Where the porter placed in charge of such a car by the company makes an indecent assault on a female occupant thereof, she is entitled to recover from the company a fair pecuniary compensation for all injuries, temporary or permanent, directly caused to her in her person, health, and strength, including compensation for the pain and suffering, mental and physical, which has been, or may thereafter be, caused.

At Law.   Action for damages for assault.

*Joy, Hudson, Call & Joy,* for plaintiff.

*Hubbard & Spaulding* and *John S. Runnels,* for defendant.

SHIRAS, J., *(charging jury.)*   In the cause now on trial before you, the plaintiff, Mrs. Campbell, claims damages against the defendant, the Pullman Palace-Car Company, in the sum of $20,000, for injuries which she claims were caused to her when she was an occupant of a sleeping-car furnished by defendant for use as a sleeping-car upon a train of passenger-cars operated by the Chicago, Milwaukee & St. Paul Railway Company between Chicago, Ill., and Sioux City, Iowa, such injuries being alleged to have been caused by the misconduct of the porter employed by the defendant upon said sleeping-car.   Before passing to a statement of the particular issues to be submitted to you in this cause, it is proper for me to instruct you as to the relation existing between the Pullman Car Company and persons occupying the sleeping-cars furnished by the defendant company for the use of the traveling public.   As I construe the contract between the defendant and the Chicago, Milwaukee & St. Paul Railway Company, the Pullman Company agrees to furnish for the use of the public what are commonly known as "sleeping-cars," which, when in use, form part of the train run by the railway company for the transportation of passengers along the line of railway.   The Pullman Company, by thus furnishing cars to be used as sleeping-cars by the traveling public, does not assume towards the persons occupying such cars the relation of a common carrier.   It does not undertake the duty of transporting the passenger to his destination.   That duty is assumed by the railway company, and for the performance thereof the passenger must look to the company managing the railway; and the Pullman Company is not liable for injuries received by the occupants of its cars from accidents connected with the movement of the train.   Nor is it responsible for the negligence or misconduct of those persons charged with the duty of operating the train of which the sleeping-cars may form part.   While, however, it assumes no responsibility for the mere transportation of the persons occupying its cars, and does not occupy the re-

lation of a common carrier to them, it nevertheless does assume certain duties and obligations to its patrons, and becomes bound to the exercise of reasonable care in the performance thereof. The Pullman Company, by its mode of managing these sleeping-cars, represents to the traveling public that they may be occupied with reasonable safety and comfort as sleeping-cars; and, by receiving pay for the use thereof, the company agrees with its patrons that it will exercise ordinary care to secure the comfort and safety of those using the same for the purposes for which such cars are furnished. The person or persons placed in charge of such sleeping-cars by the Pullman Company is bound, as an employe of the company, to the exercise of ordinary care for the protection and comfort of persons using such car in accordance with the regulation of the company; and if such person, either through failure to exercise proper care, or by willful misconduct on his part, permits or causes injury to happen to an occupant of the sleeping-car placed under his charge, the Pullman Company will be liable for the damages caused thereby.

In the answer filed in this case, the defendant admits that on the 15th and 16th days of February, 1889, it was engaged in operating a sleeping-car on the line of the Chicago, Milwaukee & St. Paul Railway Company between Chicago, Ill., and Sioux City, Iowa, in connection with the regular passenger train reaching Sioux City in the morning, and admits that the plaintiff was a passenger upon the passenger train in question, and had purchased and paid for a ticket from defendant for a seat and berth in said sleeping-car belonging to defendant. There is no conflict in the testimony adduced by the parties plaintiff and defendant touching the fact that the plaintiff was an occupant of the sleeping-car which left Chicago on the 15th, and reached Sioux City on the morning of the 16th of February, 1889. It thus appears that the plaintiff was rightfully an occupant of said sleeping-car at the time named; and, while it was being conveyed to Sioux City, the plaintiff was entitled to demand of the defendant the exercise on its part of ordinary care to secure to her the safe and comfortable use of said sleeping-car, and its conveniences, for the purpose for which said car was placed in said train. In the performance of its duty in this respect, the defendant company would be responsible for the willful misconduct, if any such there was, of its own employes placed in charge of said sleeping-car, when such misconduct was of such nature as to interfere with the safe and comfortable use of said car by the plaintiff for sleeping-car purposes.

On part of plaintiff, it is charged that the porter employed by the defendant and placed in said car, did, in the morning of said 16th of February, 1889, between the station of Manilla and Sioux City, make an indecent assault upon plaintiff while she was occupying the berth assigned to her,—placing his hands upon her person, making indecent proposals to her, and exposing his person before her. On part of the defendant, it is denied that the porter did thus misconduct himself; that, while it is true that the porter did go to plaintiff's berth, he did so for the purpose of arousing her from an uneasy sleep, and awakened her in the usual manner, and that plaintiff, not being accustomed to travel-

ing upon sleeping-cars, nor to the sight of colored persons in close proximity to her, and being thus aroused, may have been rendered somewhat nervous and frightened, and has thus been led to misconstrue the action and purpose of the porter in going to her berth. If, in fact, the porter on said car did act towards the plaintiff in the manner charged by plaintiff, such conduct on his part would unquestionably be a violation of the duty due and owing from defendant to the plaintiff while she was an occupant of said sleeping-car. The pivotal point in the case, gentlemen, is this question of fact, which you are called upon to decide. In determining this question, you will be required to consider the credibility of the witnesses, and the weight to be given to their testimony. In considering these questions, you take into account the pecuniary or other interest, if any, which a given witness may have in the result of the case, or the absence thereof; the appearance of the witness, if brought before you; the manner of his testifying; his means of knowledge; and whether his testimony is corroborated, or the contrary, by the admitted or proven facts of the case. For the purpose of attacking the credibility of witnesses, it is permitted to either party to show that a given witness has made at other times statements contradicting some material part or portions of his testimony; the proper foundation therefor being first laid. In considering impeaching testimony of this character, the jury should be careful to distinguish between such discrepancies in statements made at different times by a witness touching a given fact or transaction as may naturally arise from the usual imperfections of the human memory, and those which indicate an intention on part of a witness to prevaricate and mislead. It is only those of the latter character that have weight as matter of impeachment.

The burden of the issue is upon the plaintiff; and she must satisfy you, by a fair and reasonable preponderance of the evidence, that in fact the porter in charge of said sleeping-car was guilty of the misconduct charged against him, before she can ask a verdict in her favor at your hands. If the plaintiff has failed to satisfy you, by a fair and reasonable preponderance of the evidence, that the porter did commit the acts of misconduct alleged against him, then she has failed to make out her case, and your verdict must be for the defendant. On the other hand, if, by a fair and reasonable preponderance of the evidence, you are satisfied that the porter in charge of said car was guilty of the alleged acts of misconduct towards the plaintiff, then your verdict should be for the plaintiff. What, then, gentlemen, do you find the fact to be in this particular? Was or was not the porter guilty of the acts of misconduct alleged against him by the plaintiff? You have heard the evidence adduced on behalf of the plaintiff, including her own testimony, giving the plaintiff's version of what occurred on the sleeping-car on the morning of February 16th as it came from Manilla to Sioux City. You have likewise heard the evidence adduced on behalf of the defendant, including the testimony of the porter of the car, giving the defendant's version of what occurred on that occasion. You have heard the evi-

dence adduced by both parties touching plaintiff's arrival at Sioux City, the meeting of her husband, going to the hotel, and thence to a boarding-house kept by Mrs. Fuller; touching the complaints made by plaintiff; touching the physical condition of plaintiff; touching the complaint made by plaintiff's husband to the railway superintendent, the porter, and others, and all other matters introduced by both parties with the intent to throw light upon the main issue involved. Counsel for the respective parties have, in their arguments before you, presented the views taken by each party of the facts of the case, and of the conclusions of fact they seek to deduce from the evidence submitted to you. It is for you, calmly, dispassionately, and impartially, to consider the entire evidence thus submitted to you, and from it determine what the truth is upon this issue of fact between the parties. If, upon due consideration of the case, you find that the porter employed on the sleeping-car was in fact guilty of the misconduct alleged against him by the plaintiff, then your verdict should be for the plaintiff; but, on the other hand, if the evidence, by a fair and reasonable preponderance thereof, fails to satisfy you that he was guilty of such alleged misconduct, then your verdict should be for the defendant.

If, upon this issue, you find for the plaintiff, you will then be required to assess the damages to be awarded to the plaintiff. What the plaintiff is entitled to, in case you find in her favor, is a fair pecuniary compensation for the injuries naturally and immediately resulting from the outrage and wrong inflicted upon her. She is entitled to be compensated for the mental and physical pain and suffering, if any, caused to her at the time, and which she has since suffered as a direct consequence of the wrong done her. On part of plaintiff, it is claimed that, when she went upon the sleeping-car, she was in a pregnant condition; that the assault upon her brought on a miscarriage, which occurred within a few days after she reached Sioux City; that from the time of reaching Sioux City she was suffering and ill, caused by the wrong done her; and that she is still suffering in her health and strength as a consequence thereof, and that she has probably been rendered barren, and that she is not likely ever to fully recover from the injurious effects resulting to her from the wrongs complained of. On part of defendant, it is denied that any such injuries were caused to the plaintiff; that, while it may be true she suffered a miscarriage, it was caused by plaintiff's own negligence and want of proper care when she was recovering from her first illness, and from her improperly exposing herself at that time. If the plaintiff, through her own want of care, and failure to exercise ordinary prudence and foresight, aggravated the injuries under which she was at the time suffering, and thereby caused the miscarriage, she cannot hold the defendant responsible therefor, as such result would then be due to her own negligent conduct.

Now, gentlemen, you have heard the evidence adduced by both parties on this question, including the evidence tending to show the condition of plaintiff immediately following her arrival in Sioux City, and what her condition was, and what she did up to the time the mis-

carriage took place, together with the testimony of the physicians touching her condition, and the causes of miscarriage; and from the entire evidence it is for you to say what the cause of the miscarriage was. If you find that it was caused by the wrong done the plaintiff upon the sleeping-car, then the plaintiff is entitled to be compensated for the suffering caused her thereby, and for any injurious effects, temporary or permanent, caused thereby to the person, health, and strength of the plaintiff.

Briefly restated, the plaintiff is entitled to be fairly compensated for all injuries, temporary or permanent, directly caused to the plaintiff, in her person, health, and strength, by the wrong done her, including compensation for the pain and suffering, mental and physical, which has been caused, or may be hereafter caused, to the plaintiff, by reason of the wrong suffered by the plaintiff. The ascertainment of the amount to be awarded as compensation for such injuries as you find the plaintiff is entitled to recover for is of necessity intrusted to the sound common sense and good judgment of the jury. The case, gentlemen, is in your hands. Give it the consideration it deserves, and render the verdict which, in your impartial judgment, appears to be the proper response to the evidence submitted to you, and the instructions given you by the court.

Verdict for plaintiff for $11,000.