## HILL v. PULLMAN CO.

### (Circuit Court, E. D. Pennsylvania. June 13, 1911.)

### No. 1,274.

1. CARRIERS (§ 413*)—SLEEPING CARS—THEFT FROM PASSENGER.

A passenger on a sleeping car may recover damages for money and personal effects stolen from him through the negligence of the sleeping car company in failing to keep such constant watch over passengers asleep as will protect them from robbery or unwarranted intrusion.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1583–1588; Dec. Dig. § 413.*

Duties and liabilities of sleeping car companies, see notes to Duval v. Pullman Palace Car Co., 10 C. C. A. 335; Edmunson v. Pullman Palace Car Co., 34 C. C. A. 386; Bacon v. Pullman Co., 89 C. C. A. 10.]

2. CARRIERS (§ 417*)—SLEEPING CARS—THEFT FROM PASSENGER—EVIDENCE.

In an action against a sleeping car company for theft of a passenger's personal property while sleeping in a car, evidence held to sustain a finding that the company was negligent in failing to keep a sufficient watch to secure passengers against intrusion.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 417.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. CARRIERS (§ 411*)—SLEEPING CAR PASSENGERS—ROBBERY—ASSAULT—PERSONAL INJURY.

Since violence is often a concomitant of sneak thieving or robbery of a sleeping victim, a sleeping car company bound to keep watch over its passengers to prevent robbery was bound to take notice of the fact that violence was liable to accompany the robbery of passengers while asleep, and hence the company was liable for personal injuries to a passenger caused by a robber inflicting a blow on him while he was asleep in order to effect the robbery, all of which was due to the sleeping car company's negligence in failing to keep a sufficient watch.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1579, 1581; Dec. Dig. § 411.*]

4. EVIDENCE (§ 244*)—DECLARATIONS OF SERVANT.

Where a sleeping car porter was the sole agent and representative of the sleeping car company and was in charge of the car in which plaintiff was riding at the time he was assaulted and robbed, the porter's declarations were admissible against the company.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 916–936; Dec. Dig. § 244.*]

At Law. Action by Chester L. Hill against the Pullman Company. Verdict for plaintiff. On motion for new trial and for judgment non obstante veredicto. Denied.

S. R. Zimmerman, Henry P. Brown, and W. U. Hensel, for plaintiff.

Faunce & Andrade, for defendant.

BUFFINGTON, Circuit Judge. In this case Chester L. Hill brought suit against the Pullman Company to recover damages for alleged negligence of the latter while he was occupying a berth on one of its sleeping cars. The jury rendered a verdict in his favor for $180, being for money and personal effects stolen from him while asleep in the berth, and for $1,200 damages for personal injuries inflicted on him by the robber who struck him while thus asleep and rendered him unconscious in order to effect the robbery. The defendant now moves for a new trial and for judgment non obstante veredicto.

In support of the motion for a new trial, five reasons are set forth, which we now dispose of seriatim. The first reason, "because the verdict was against the law"; the second, "because the verdict was against the evidence"; the third, "because the verdict was against the weight of the evidence"; and the fourth, "because the verdict was excessive"—we answer by saying that under the law as laid down by the court the jury were warranted in finding a verdict in favor of the plaintiff, that a verdict in favor of the plaintiff was justified by the weight of the evidence, and that the damages were not excessive. Furthermore, being of opinion, as stated hereafter in our refusal of the defendant's motion for judgment non obstante veredicto, that its third point was rightfully denied, we are of opinion that its fifth reason for a new trial, "because the learned judge erred in refusing the defendant's third point, which was as follows, 'Under all the evidence your verdict must be for the defendant,' " is without merit, its motion for a new trial is refused.

It remains, therefore, to dispose of the motion for judgment non obstante veredicto. That motion is in effect a demurrer to the evidence, and, as the motion questions the verdict as a whole and in no way seeks to differentiate the part based on personal injuries from that based on loss of money and personal effects, it would seem that, if a recovery for the latter items was warranted, the defendant's motion for judgment non obstante veredicto should be denied.

[1] The question of whether a passenger on a sleeping car can recover damages for money and personal effects stolen from him through the negligence of the sleeping car company is too firmly established to be questioned. It suffices to refer to Pullman v. Gardner, 3 Penny. (Pa.) 81; Carpenter v. Railroad, 124 N. Y. 53, 26 N. E. 277, 11 L. R. A. 759, 21 Am. St. Rep 644; Blum v. Southern Co., Fed. Cas. No. 1,574; Lewis v. Sleeping Car Co., 143 Mass. 267, 9 N. E. 615, 58 Am. Rep. 135; Campbell v. Pullman Co. (C. C.) 42 Fed. 484; 2 Cooley on Torts, 1380; Hutchinson on Carriers, § 60, note 2. These citations in effect hold that a sleeping car company invites passengers to pay it for the opportunity of enjoying rest and sleep, and that its berths are so unprotected that a sleeping car company must keep such a constant watch over them as will protect the sleeper from robbery and unwarranted intrusion. Thus in Campbell v. Pullman Co., supra, a verdict was sustained for a criminal assault by a porter on a female passenger, and in Lewis v. Sleeping Car Co., supra, for negligence in a porter failing to keep watch, whereby thieves got access to a sleeping passenger's vest under his pillow and slit open with a knife an inside pocket in which he had sewed up his money. Indeed, in an early and leading case on the subject, Pullman v. Gardner, supra, decided in 1883, it was assigned for error that the trial court had charged:

"If he (the porter) went out of that aisle, even for a very few minutes, and during that time this robbery occurred, and the jury believe that if he had been in his place of observation it would not and could not have occurred without detection, the company is liable, because he failed to do his duty to that extent that it allowed this robbery to be done."

But the Supreme Court of Pennsylvania affirmed the judgment, saying:

"Unless a watchman be kept constantly in view of the center aisle of the car, larceny from a sleeping passenger may be committed without the thief being detected in the act."

In 1891 the Court of Appeals of New York, in Carpenter v. Railroad Co., supra, following the Gardner Case, said:

"The negligence complained of is that none of the defendant's employés were continually on guard in the car in a position to observe the movements of all persons in the passageway between the sections. A corporation engaged in running sleeping coaches with sections separated from the aisle only by curtains is bound to have an employé charged with the duty of carefully and continually watching the interior of the car while berths are occupied by sleepers. Pullman Car Co. v. Gardner, 3 Penny. [Pa.] 78. These cars are used by both sexes of all ages, by the experienced and inexperienced, by the honest and dishonest, which is understood by the carriers, and, though such companies are not insurers, they must exercise vigilance to protect their sleeping customers from robbery. A traveler who pays for a berth is invited and has

the right to sleep, and both parties to the contract know that he is to become powerless to defend his property from thieves, or his persons from insult, and the company is bound to use a degree of care commensurate with the danger to which passengers are exposed. Considering the compensation received for such services and the hazards to which unguarded and sleeping passengers are exposed, the rule of diligence above declared is not too onerous."

[2] Now the facts in the present case tended to show the defendant company's negligence. The car in question ran on a slow night train from Philadelphia to New York. The car behind it was the last one on the train, was an empty baggage car, and was not visited by the regular trainmen. These were all circumstances known to the representatives of the defendant and were proper to be considered by a jury in determining whether a due watch was maintained. And it was shown the porter was not keeping watch, but was otherwise engaged at a place in the forward end of the car from which he could not see the aisle. The jury was therefore justified in finding the defendant company was negligent in failing to keep a proper watch over the car, and that plaintiff's property was lost as a direct result of that negligence. We are satisfied the verdict, in so far as the personal property—which was such only as a traveler ordinarily carries—must be sustained.

[3] It remains to consider whether the company was liable for the injury to the plaintiff's person. On behalf of the Pullman Company, it is contended an assault is an injury of such an unusual and unexpected nature that a sleeping car company is not bound to provide against it. Touching the alleged unusual character of the injury, it will be observed the finding of the jury takes it out of that category, for it was charged as follows:

"Now, I may say to you, gentlemen, that the duty of the Pullman Company towards the sleeping occupants of its cars consists in taking due care on its part to prevent injuries which, in the ordinary experience of travelers, are liable to happen, and which, therefore, the company is bound to guard against. As we stated here in the argument on these law points, if a man should take a pistol and shoot another person in the car, we would at once see that the company is not bound to foresee the likelihood of any such thing as that, and they are not, therefore, bound to protect against it. I only instance that as indicating the things which a sleeping car company is not bound to anticipate, and, therefore, is not bound to guard against. It is only bound to exercise care against those things, which, in the ordinary course of travel, as things happen on trains situated such as this, might happen to a person who is sleeping on one of its cars. It will therefore be for you to determine, gentlemen, whether, under all the circumstances of this case, the proofs of the case, the character of the train, stopping at stations along the road, the rear car door being unsecured, and access to the sleeping persons being simply through curtains—no doors to protect them—whether the injury that happened to Mr. Hill was one which the company, exercising due care and due precautions and due observation of care on its part, had reason to and was bound to anticipate might happen, and which it was bound to protect him against. If you find that that was so, that this was a danger of that character, and that the Pullman Company, either through the failure to have a proper fastening on the door or through the inattention of the porter, if there was inattention, or from his lack of care in any respect in that way—if the Pullman Company was guilty of a lack of care in any of those respects, and the result of it was the injury to the plaintiff, then he is entitled to recover in this case. If this accident was one which was so unusual in its character that the Pullman Company had no reason to anticipate it, then the plaintiff would not be en-

tined to recover, because the Pullman Company would not be bound to protect against injuries of that character."

But, apart from such finding by the jury, we think the court could not, as a question of law, have instructed the jury that the car company was not answerable in damages for this assault. It will be observed that the duty of the car company was to maintain a vigilant watch in the car. If it had done so by its porter, or if it had even provided a lock on the rear door, the plaintiff could not have been stealthily robbed, for it will be observed this is a case of sneak thieving, and not of open, overpowering violence. The sleeping car company's negligence, therefore, made the robbery possible in failing to keep watch. Such being the fact, can it be said as a matter of law that personal violence is so unusual and foreign even to stealthy robbery as to be wholly disassociated therefrom? On the contrary, experience shows that violence is often a concomitant of that character of robbery; that it is an incident to it; that if necessary to overcome a victim to accomplish the theft, to prevent outcry and alarm, and to effect escape, violence is the usual accompaniment of theft. A thief who would make his way to the bedside of a sleeper to rob, and who did not have an instrument of violence at hand to silence the sleeper if necessary to perpetuate the crime, would be a tyro in his line. And so correlated and coupled in the eyes of the law are robbery and personal injury that, if one in attempting to rob should undesignedly kill his victim, he is held guilty of murder. "If one intends to do another felony and undesignedly kills a man, this also is murder." 4 Blackstone, 200. If the criminal law has thus coupled violence even to the point of murder with robbery, how can it be contended that this car company, which kept such a negligent watch that a robbery accompanied by violence was effected in its car without its knowledge, was not bound to foresee that violence might accompany such robbery? When the criminal side of the law couples murder as a consequence to robbery, should not the civil side at least refrain from saying, as a matter of law, that they are so remote that one who is bound to keep watch against robbery can shut his eyes to the possibility of violence accompanying that robbery?

We have not overlooked Connell v. Railroad, 93 Va. 44, 24 S. E. 467, 32 L. R. A. 792, 57 Am. St. Rep. 786. There the question decided was based wholly on the pleadings, and we have been able to get no report of the case showing the facts and circumstances. In our case we have the facts, and they show that robbery was not only intended, but committed, and that the violence committed was a means to effect the theft, and the two were blended in the one act of robbery, which act was only possible through the negligence of the Pullman Company. When such is the case, and where, as here, the act is brought about by the negligence of a sleeping car company, the law should hold it to a due measure of responsibility. Its duty is plain. It is simply one of watchful oversight of a long, straight aisle. The safety of the sleeping passengers from dangers of fire, an attendant at hand to answer their summons, a person alert and prepared to render assistance in case of collision or sudden emergencies, are all matters which naturally call

for the presence of some company servant on the car, and, if to this we superadd the legal duty to watch the aisle and prevent either theft of property and the protection of women on the cars, we are not holding the sleeping car company to any higher standard of duty than common sense, reason, and security demand. We believe an enforcement of this judgment and holding the company to this measure of responsibility will tend to the comfort, safety, and peace of mind of the traveling public, which pays a sleeping car company for these things.

[4] It remains to notice another assignment, which is not, however, made grounds for a new trial, namely, that the declarations of the porter, who was in charge of the car, were not admissible. We fail to see why they were not. The porter was the sole agent and representative of the company and was in charge of the car. The declarations of conductors and porters in such cases seem to have been given without objection in several of the cases cited, notably in Pullman Co. v. Gardner and Lewis v. New York Sleeping Car Co. Obviously they are admissible on the ground that they were made by the agent of the company in charge of the car.

On the whole, therefore, we are of opinion the defendant's motion for judgment non obstante veredicto should be refused, and judgment entered for the plaintiff on the verdict. It is therefore so ordered.