Marshall, C. J.
The plaintiff in this action, a passenger in a public taxicab, sued to recover damages from Komer & Son, as owners and operators of a line of public taxicabs then being operated for hire in the city of Bueyrus, Ohio. It was alleged in the petition and admitted in the answer that the defendants did at the time complained of own and operate a line of taxicabs for hire. It was claimed that plaintiff, at about the hour of 12 o’clock at night, went to the place of business of defendants in Bueyrus, and applied for a taxicab to take her to her home in a remote part of the city, and found Edward Driscoll, an employe of defendants, who started to take her to her home in a taxi, but who instead of going directly to her home, drove the machine into the country, where he assaulted and ravished her.
*486 At the trial the defendants endeavored to prove that Driscoll was not on duty at the time; that by the terms of his employment his duties ceased at 6:30 in the evening. It was admitted, however, that Driscoll used a machine belonging to the defendants, and on his return to the garage paid into the hands of one of the defendants the usual fee for such taxi service.
The testimony of plaintiff, strongly supported by the testimony of her mother and other attendant circumstances, if believed, made a clear case of rape. Driscoll testified at the trial, and, while admitting having driven the girl into the country before taking her home, and admitting the act of sexual intercourse, denied that it was against her will.
The court clearly instructed the jury that there could be no recovery unless it was found that there was unlawful carnal knowledge by force and against plaintiff’s will. The jury were further definitely instructed that, if the act of intercourse was with plaintiff’s consent, the verdict should be in favor of the defendants.
In addition to the allegations of the petition that plaintiff was a passenger in a public taxicab driven by an employe of the firm owning and operating the taxicab, the petition contained the further allegation that the driver was a person of low morals, and a depraved character, which fact his employers knew, or, by the exercise of ordinary care, should have known.
Much of the charge of the court is taken up with that feature of the case, which need not receive serious attention at our hands, because the conclusions we have reached in this controversy make it unnee *487 essary to prove that, the owner and operator of a public taxicab had notice or knowledge of the depraved character of the driver. The jury returned a verdict in favor of the plaintiff, and this verdict must have been based upon a finding that rape, as defined by the court, had actually been committed.
While it is not seriously questioned that the defendants were common carriers of passengers, inasmuch as there has never been an authoritative declaration by this court upon this point, it will be proper to briefly state that all the authorities without exception have declared that public taxicabs, operated for hire, and which are offered promiscuously to the public for the service of transportation of passengers, are common carriers. This is true, without any regard to the limits of the service. Huddy on Automobiles (5th Ed.), p. 45; Berry on Automobiles (3d Ed.), Section 1502.
It was admitted in the answer that they “were the owners and operators of a certain line of taxicabs for hire in the city of Bucyrus, Ohio,” and in their testimony that they held themselves out aa willing to haul people in taxicabs for hire.
The court further instructed the jury that, in order for plaintiff to recover, they must find that Dris-. coll was at the time in the employ of the defendants and performing his usual duties as a taxicab driver. It was therefore claimed by defendants’ counsel that, inasmuch as the driver’s duties usually ended at 6:30 in the evening, the act was not committed by him while performing his usual duties as a driver. Inasmuch as Driscoll was a regular employe of the defendants, and this service was rendered by him while using one of the conveyances of *488 the defendant, for which the usual fee was paid directly into the hands of one of the defendants, it would be ridiculously technical to hold that the service was thereby rendered otherwise than in the per - formance of his usual duties.
Having found that the relation of carrier and passenger exists, it only remains to determine and declare the duty owing by a common carrier to protect passengers against insults and assaults by the carrier’s employes and servants during the course of the transportation.
It is claimed by counsel for the defendants that the carrier can only be held responsible for negligent and careless driving, and that the carrier is not responsible if it has exercised ordinary care in selecting drivers who are competent and skillful in operating a taxi. This court has recently declared in the case of Elliott v. Harding, 107 Ohio St., 501, 140 N. E., 338, that the owner of any motor vehicle may be held responsible for damages caused by an incompetent driver, known to be such by the owner. The instant case, however, is based upon a very different principle. The issues in this case are not confused or complicated by any such considerations as a troublesome or intoxicated passenger, or one who refuses to pay fare, or an altercation between a passenger and the servants of the carrier, neither is there any claim that the girl was the aggressor, or that her injury and damage are chargeable to her own acts or negligence. The act of the driver was unprovoked and was committed while discharging the duties of his employment, and while using the facilities and equipment of his employer, and for which the employer received the compensation *489 usually paid for such service. The facts therefore make the strongest possible case, and the injury and damages were of a most grievous character. This ease does not involve any new principle of law, and it is only novel in that it is sought to apply the same principles to motor traffic which are commonly applied to other kinds of public transportation.
Among the reported cases are found a very large number similar in kind to the instant case, and differing only in the character of the assault and the extent of damage perpetrated. Among the early cases can be found a few of a contrary tenor, but the overwhelming weight of authority, even among the earlier cases, and an unbroken unanimity among the later cases, charge the carrier with liability for unwarrantable assaults upon passengers by the servants of the carrier. The carrier’s obligation is to carry the passenger safely and properly and to treat him respectfully, and if the performance of this duty is intrusted to an agent or servant the carrier is held to a strict responsibility for the assaults and insults of such servants. We will notice only a few cases which are of a very similar nature.
In the case of Dwinelle v. N. Y. C. & H. R. R. Co., 120 N. Y., 117, 125, 24 N. E., 319, 322 (8 L. R. A., 224, 17 Am. St. Rep., 611), a passenger was assaulted by the porter of a sleeping car, the porter not being employed by the railroad company, but the Pullman car was a part of the train in which the passenger was being transported. The court in that case used the following language:
“A common carrier is bound, so far as practicable, to protect his passengers, while being con *490 veyed, from violence committed by strangers and copassengers, and he undertakes absolutely to protect them against the misconduct of its own servants engaged in executing the contract * * * from an assault committed upon a passenger by a servant intrusted with the execution of a contract of a common carrier.”
In Garvik v. B., C. R. & N. Ry. Co., 131 Iowa, 415, 108 N. W., 327, 117 Am. St. Rep., 432, a brakeman followed a girl into the toilet of a day coach in the early morning, and criminally assaulted her. The following is quoted from the syllabus:
“A railway company is liable in damages for a rape committed on one of its passengers by an employe.”
In Campbell v. Pullman Palace Car Co. (C. C.), 42 Fed., 484, the Pullman Company was held responsible for an indecent assault made upon a female passenger by the porter of the car. This case was affirmed without official report by the Supreme Court of the United States.
In New. Orleans, J. & G. N. Rd. Co. v. Allbritton, 38 Miss., 242, 75 Am. Dec., 98, it was held:
“A railroad company impliedly warrants that its engineers, conductors, and other employes engaged in running its trains are possessed of due skill, and are competent and faithful; and it is liable under all circumstances for any injury occasioned by the misconduct, rashness, or negligence of such persons; and where an injury is caused by the gross negligence or wanton and willful misconduct of its employes, it is liable for exemplary damages.”
In the case of Savannah, F. & W. Ry. Co. v. Quo, *491 103 Ga., 125, 29 S. E., 607, 40 L. R. A., 483, 68 Am. St. Rep., 85, the following proposition of law is stated in the syllabus:
“It is a carrier’s duty to protect passengers from injury, violence, insult, and ill treatment at the hands of its employes, during the course of transportation. * * * If a person employed by a railroad company as a baggagemaster upon one of its trains assaults a female passenger thereon, with intent to commit a rape upon her, the company is answerable in damages to her for the act.”
In all of the foregoing cases it is very clear that the employes went far beyond the regular duties incumbent upon them as servants of the carrier, but the carriers were nevertheless held liable to respond in damages for such acts.
The text-writers have laboriously reviewed a large number of authorities and have deduced therefrom rules in accord with the principles herein stated. 3 Thompson on Negligence, Sections 3184 and 3185; 2 Shearman & Redfield on Negligence (6th Ed.), Section 513.
So far as rail transportation is concerned, the rule may be regarded as firmly established that carriers insure passengers against unwarrantable assaults and insults at the hands of the carrier’s agents and servants while in the course of the journey under a contract of carriage.
Upon what principle should a different rule apply to motor vehicles? Motor vehicles today occupy a larger place in the social, industrial, and economic fabric than any other factor of twentieth century civilization. The automobile is contributing very largely to the pleasure of the people, while at the *492 same time the reckless use of same is taking a tremendous toll of life and limb. More and more each year it is increasing as a factor in commercial transportation of freight and passengers, and in many communities is driving electric traction from the field. More important and more dangerous is the fact that motor vehicles are used as the instrumentalities of crime, especially the crimes of robbery and rape, and as a means of escape and thwarting the administration of justice. All these facts are known and recognized by the public, and the courts would be grossly remiss in the discharge of their duties if they failed to recognize them and guard against them by declaring rules and principles calculated to overcome the well-known evil tendencies.
In many of our larger cities, where public officials are notoriously failing and refusing to enforce certain laws because of their antipathy to such laws, thereby causing a general increase of crime and permitting lawlessness to progress beyond control, the public taxi has been utilized as means of safety to those who are compelled to traverse the streets of such localities after nightfall. This last resort of safety will have been lost, if the public cannot have the assurance that drivers of public taxicabs are men of integrity and character.
This assurance can only prevail if the owners of such vehicles employed in public ti'ansportation of passengers are held to a strict accountability for unwarrantable assaults and insults at the hands of employes in charge of such passengers.
Therefore, upon principle, as well as analogous *493 authority, it is the judgment of this court that the judgments of the lower courts should he affirmed.

Judgment affirmed.

Wanamaker, Robinson, Jones, Matthias, Day, and Allen, JJ., concur.