### CULBRETH v. PULLMAN CO.

(District Court, M. D. Alabama, N. D., at Montgomery. November 2, 1923.)

1. Carriers ⬤411—Sleeping car company held liable for assault on sleeping passenger by other passenger.

A sleeping car company *held* liable in damages to a woman passenger who was assaulted by another passenger while asleep in her berth at night, it being shown that the company had no one on guard in the aisle.

2. Carriers ⬤411—Duty of sleeping car company to afford reasonable protection to sleeping passengers.

A sleeping car company which receives pay for the use of a berth in one of its cars is under duty to afford reasonable protection to the passenger while sleeping in such berth.

3. Appeal and error ⬤1004(1)—Carriers ⬤416—Damages for assault on woman in sleeping car largely discretionary with jury.

Damages which may be awarded for an assault upon a woman while sleeping in a berth in a Pullman car rest largely in the discretion of the jury, and their verdict will not be disturbed by the court unless clearly the result of passion or prejudice or so lacking in support in the evidence as to be clearly excessive.

4. Carriers ⬤416—Verdict of $15,000 for damages for assault of passenger reduced to $10,000.

A verdict against a sleeping car company for $15,000, for an assault on a woman passenger while sleeping in a berth, *held* excessive and a remittitur to $10,000, required in view of the fact that plaintiff apparently was not seriously injured and that defendant had a rule requiring a guard in the aisle, which was disregarded by the employees.

At Law. Action by Mrs. Annie R. Culbreth against the Pullman Company. On motion by defendant to set aside verdict and for new trial. Denied, on condition of filing remittitur.

Hill, Hill, Whiting & Thomas, of Montgomery, Ala., and Albritton & Albritton, of Andalusia, Ala., for plaintiff.

C. P. McIntyre and Jones & Thomas, all of Montgomery, Ala., for defendant.

CLAYTON, District Judge. The defendant makes motion to set aside the verdict and judgment heretofore rendered in this case. It

⬤For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

is unnecessary to be more particular as to the ground of the motion than as it may appear from my discussion hereinafter. It is sufficient to say the defendant contends that the ruling of the court on the law question involved was incorrect, and that the damages awarded by the jury are unjust and excessive.

Counts 1, 2, 3, 4, 5, and 6 of the complaint were eliminated before the submission of the case to the jury, by amendment of the complaint; hence defendant's insistence as to error in the court's overruling the demurrers to some of these counts need not be considered. The plaintiff's action was submitted to the jury on two counts of the complaint numbered, respectively, 6-a and 7-b.

The facts are that the plaintiff, a woman in delicate health, was a passenger on a train of a railroad and whereon the Pullman Company was operating a sleeping car attached to such train; she purchased from the defendant a ticket carrying the privilege of occupying and sleeping in one of the berths upon the Pullman sleeping car; this berth was protected from the aisle of the car by curtains only; no means were provided for locking out or excluding intruders who might approach from the aisle; and during the usual hours for sleeping, while the plaintiff was occupying this berth as a sleeping compartment, an intruder from the aisle seized her while she was asleep and inflicted the injury complained of.

The plaintiff alleged in substance that the company was in duty bound to exercise reasonable care and diligence in guarding and protecting her as its passenger while she was asleep in her berth, and that it negligently failed to do so, etc.

[1] The evidence in material respects was without serious controversy. It was shown to be the rule of the company that some one of its servants should be on watch in the car at all times during the night; that the intruder who committed the assault upon the plaintiff was insane was immaterial. The berth occupied by him was at the front end of the car, the end where the men's toilet and smoking compartment were. There was no necessity for the intruder who assaulted plaintiff to go towards the rear of the car. The plaintiff's berth was toward the rear of the car. The conductor of the car was asleep in a berth across the aisle a few feet from the plaintiff's berth. The intruder during the usual hours for sleep went towards the rear of the car and projected himself into the plaintiff's berth and seized her by the arm and shoulder and pressed her down upon and held her in the berth. She screamed, and continued to scream and to call for help. She attempted to reach the electric button to call the porter, and her assailant caught hold of her hand and held it so that she could not ring the electric bell, and continued his effort to ravish the plaintiff. At this juncture several passengers, including a man and his wife who were sleeping in a nearby berth, were aroused, and that man and other passengers came to the plaintiff's rescue and pulled her assailant out of her berth and away from her and thereby prevented the accomplishment of his criminal purpose.

The sleeping car conductor said that he had shortly before this occurrence thrown himself into a berth with his clothes on, and was asleep until he was aroused by the commotion raised by the interference of

the passenger. The colored porter said that he was in the smoking compartment of the sleeping car, and that he responded when he heard the noise made in the aisle of the car. He did not say that he heard the plaintiff's screams or calls for help. It must be remembered the man and his wife above referred to testified that the porter did not come to or near the plaintiff until she had been rescued and her assailant taken away from her and back to his own berth.

[2] The allegations of fact, with the averments of negligence on the part of the defendant, raised the question of the obligations of the defendant to the plaintiff. The car was under the control and operation of the defendant. It was the agency of the defendant and the plaintiff was its patron. This vehicle carried the managing officials or employees of the defendant. They were vested with police power over the internal management of the car, and the plaintiff was entitled to the reasonable oversight and protection of the defendant; the plaintiff paid the charge exacted by the defendant to enter this car, and when she did so and retired for sleep and rest she was beyond any protection except that which might be afforded to her by the defendant, and possibly by fellow passengers who under the law owed her no duty of protection. Of course, she paid her money not merely for license to occupy space within the car, but for a place to rest and sleep in peace and quiet in reasonable safety. Perhaps it is not too much to say that the prospect of this rest, sleep, peace, and safety were the inducements to the plaintiff to pay the defendant for the privilege of occupying the berth in its car.

In Hill v. Pullman Co. (C. C.) 188 Fed. 497, United States Circuit Judge Buffington, with convincing reason and logic, shows that it was the duty of the defendant, under such material facts as are charged in the complaint, to give reasonable attention and care to the plaintiff, and that failing therein to the plaintiff's injury, liability must attach to the defendant. In the opinion in that case it is said:

"Its duty is plain. It is simply one of watchful oversight of a long, straight aisle. The safety of the sleeping passengers from dangers of fire, an attendant at hand to answer their summons, a person alert and prepared to render assistance in case of collision or sudden emergencies, are all matters which naturally call for the presence of some company servant on the car, and, if to this we superadd the legal duty to watch the aisle and prevent either theft of property and the protection of women on the cars, we are not holding the sleeping car company to any higher standard of duty than common sense, reason, and security demand. We believe an enforcement of this judgment and holding the company to this measure of responsibility will tend to the comfort, safety, and peace of mind of the traveling public, which pays a sleeping car company for these things."

In Calder v. Southern Ry. Co. and Pullman Co., 89 S. E. 287, 71 S. E. 841, Ann. Cas. 1913A, 899, the Supreme Court of South Carolina discusses the identical duty here asserted by the plaintiff against the defendant. The cases which apparently hold that no duty was upon the sleeping car company to protect its passengers from the assault of a stranger or fellow passenger until the company's agent or servant knew of the danger of such assault or the circumstances from which such danger might have reasonably been anticipated are reviewed at length. And then the conclusion is expressed that—

"The rule that the duty of the carrier to a passenger, from the wrongful acts of a fellow passenger or stranger, only applies when the carrier has knowledge of the existence of the danger, or of facts and circumstances from which the danger may be reasonably anticipated, is not applicable to passengers asleep in their berths. The principle announced in Franklin v. Atlanta, etc., R. Co., 74 S. C. 332, 54 S. E. 578, and the subsequent cases was applied, where the facts were quite different from those in the present case, and in none of them were the rights of a sleeping passenger involved. In the case of passengers, other than those in sleeping cars, it may reasonably be expected that they will be able to give notice of the necessity for protection; but knowledge of the fact that a passenger is asleep in his berth is, in itself, notice of the necessity for taking proper precautions to safeguard him, as at that time he may be presumed to be powerless to give notice of threatened danger."

In the case of Campbell v. Pullman Co. (C. C.) 42 Fed. 484, Judge Shiras, as United States Circuit Judge, charged the jury upon the duty of a sleeping car company toward its passenger, and said:

"The Pullman Company, by its mode of managing these sleeping cars, represents to the traveling public that they 'may be occupied with reasonable safety and comfort as sleeping cars; and by receiving pay for the use thereof the company agrees with its patrons that it will exercise ordinary care to secure the comfort and safety of those using 'the same for the purposes for which such cars are furnished. The person or persons placed in charge of such sleeping cars by the Pullman Company is bound, as an employee of the company, to the exercise of ordinary care for the protection and comfort of persons using such car in accordance with the regulation of the company; and if such person, either through failure to exercise proper care, or by willful misconduct on his part, permits or causes injury to happen to an occupant of the sleeping car placed under his charge, the Pullman Company will be liable for the damages caused thereby."

This case was appealed to the Supreme Court of the United States and there affirmed. Pullman Co. v. Campbell, 154 U. S. 513, 14 Sup. Ct. 1151, 38 L. Ed. 1069.

The sleeping car company held itself out to the world as furnishing safe and comfortable cars, and when it sold the ticket to the plaintiff it impliedly stipulated that she would be reasonably protected from violence while she rested and slept in her berth. The company invited her to pay for and make use of its car for rest and sleep. It knew that this plaintiff as its passenger would, as in ordinary cases, be asleep during the greater part of the night and powerless to protect herself. It also knew that she could not, like the guest of a hotel, by locking the door guard against danger. By necessity of the case the plaintiff was dependent upon the company and its officers and employees operating the car to afford her reasonable protection while she was asleep during the usual hours for sleeping. The law put this duty upon the company, and in the oral charge the court so declared, and appropriately submitted the questions of fact to the jury.

As other sustaining authorities, and without further quotation, the following cases are referred to: St. Louis R. R. Co. v. Hatch, 116 Tenn. 580, 94 S. W. 671; Footnote to Calder v. So. R. Co., supra; Pullman Co. v. Adams, 120 Ala. 581, 594, 24 South. 921, 45 L. R. A. 767, 74 Am. St. Rep. 53; Carpenter v. New York, etc., R. R. Co., 124 N. Y. 53, 26 N. E. 277, 11 L. R. A. 759, 21 Am. St Rep. 644; Pittsburg, etc., R. R. Co. v. Pillow, 76 Pa. 510, 18 Am. Rep. 424; Kuhlen

v. Boston, etc., Ry. Co., 193 Mass. 341, 79 N. E. 815, 7 L. R. A. (N. S.) 729, 118 Am. St. Rep. 516.

It is not necessary to consider particularly the decisions which hold that the sleeping car company is liable only for the loss of money or other personal effects of its sleeping passengers. Some of such cases seem to be predicated upon the idea that larceny is common, and therefore the sleeping car company must be watchful in the protection of property; but that inasmuch as assaults are less frequent than theft, less care is required of the sleeping car company where negligence permitting the assault is the gravamen of the complaint. My opinion is that the company should be held to a greater degree of care over the persons of its sleeping passengers, especially women and children or those unable to defend themselves, than over money and personal property. Certainly it cannot be said that property is of greater concern than the person of a woman.

In my judgment Hall v. Seaboard, etc., Ry. Co. (Fla.) 93 South. 151, cited by defendant, does not make correct exposition of the law of the case here. The ruling there seems to be that no diligence whatever is required of a sleeping car company towards its passengers; and there it also seems the prescribed standard of care amounts practically to nothing.

The defendant reserved no exceptions to the oral charge of the court. I think that the written instructions requested by the defendant, founded upon the idea that the defendant, as a matter of law, under the facts, is not liable for damages, were properly refused. The general charge covered every aspect of the case and submitted the facts to the jury for consideration, with appropriate instructions as to the duty of the jury in formulating their verdict upon the facts as they might find them to be.

[3] Now, as to the amount of damages assessed, it must be said that the finding of the jury should not be disturbed unless "it clearly appears that the verdict is the result of passion, prejudice, or bias"; and I may add, or unless it is not supported by the evidence. In Liles v. Montgomery T. Co., 7 Ala. App. 537, 61 South. 480, Judge Walker, now United States Circuit Judge, used this language:

"In a very recent case (Central of Georgia Ry. Co. v. White, 175 Ala. 60, 56 South. 574) the Supreme Court had occasion to state some of the rules by which appellate courts should be guided in reviewing decisions of trial courts in such matters. The opinion in that case quoted with approval part of the following statement found in 8 Am. & Eng. Ency. of Law (2d Ed.) 628: 'Where damages are susceptible of pecuniary estimate, and can be assessed with reference to or even limited by fixed standards and established values, the question of their excessiveness or inadequateness is not usually one of difficulty. But when the damages cannot be estimated in this way the question is not so easily decided. As the quantum of damages is in such cases a matter of discretion for the jury, the trial court will not set aside a verdict for damages merely because of its opinion that the jury gave too much or too little. And when a trial court has refused to disturb a verdict on account of the amount of the recovery, the appellate court is very reluctant to substitute its judgment for that of the jury and court below. To such an extent is the measure of recovery, when not susceptible of a pecuniary estimate, deemed a matter of discretion for the jury, that the universal rule is that a judgment will not be reversed on this ground alone, unless the amount is so excessive or

so grossly inadequate as to be indicative of prejudice, partiality, or corruption on the part of the jury.' And in the course of the opinion rendered in the case referred to it was said: 'If we can reasonably do so, we are bound to attribute the size of the verdict to the effect of the evidence, rather than to passion, prejudice, or other improper mental attitude of the jury.' "

It is true that the question is not the amount of damages that the judge would have awarded. Was the jury in assessing the $15,000 damages against the defendant unduly actuated by sympathy for the plaintiff or by passion to the extent at least that a greater amount was awarded than the facts of the case justified? The plaintiff was a delicate woman, suffering at the time from Bright's disease, of middle age, was en route to her relatives in North Carolina in the hope of having her health restored. She was traveling alone. She was assaulted by the burly stranger, and the testimony was convincing that his intention was to commit rape. No doubt she was greatly shocked and endured pain and suffering at the time and since on account of the assault. After she was rescued and on the day following the assault, she continued on her journey in her berth seat to Savannah, Ga., the destination called for by her ticket sold to her by the Pullman Company. At intervals during this day she was hysterical and sobbing. She testified in effect that she has never recovered from the shock given to her nervous system. However, she was able, unassisted, to go on the witness stand at the trial and testify in a clear and frank manner and was subjected to cross-examination, under which she bore herself well and with ladylike deportment.

In the Campbell Case, supra, the verdict for $11,000 was allowed to stand. In that case the plaintiff was actually raped with the result that she had a miscarriage. In the Hill Case, the plaintiff, a man, recovered $180 for money and personal effects stolen from him while asleep in the berth and $1,200 damages for personal injuries inflicted by the robber who struck him while he was asleep and rendered him unconscious in order to effect the robbery.

[4] Under all the facts and circumstances of this case, I am of opinion that $10,000 would have been an adequate measure of damages for the plaintiff. Therefore the plaintiff will be given an option of consenting to a reduction of the judgment to that amount. I have reached this conclusion in view of all the facts and circumstances of the case, including that the defendant company had a rule requiring its employees to keep watch over its sleeping passengers, and that its conductor was asleep at the time of the offense charged; and I think from the evidence the porter must have been asleep at that late hour in the smoking compartment. At any rate, it cannot be said that he was properly on watch at the time when the plaintiff was assaulted. However, it is manifest that the management of the company established its rule, as before stated, requiring watchful care by its employees over its sleeping passengers, and that these servants of the company, the conductor and porter, were guilty of serious negligence which is visited upon the defendant. But it seems to me that the sum awarded by the jury is more than compensatory—is excessive.

The parties will be furnished a copy of this opinion, and then appropriate order, in harmony with the views expressed, will be entered.