## WILKINSON et al. v. PULLMAN CO.

District Court, S. D. California, S. D.
October 20, 1927.

No. 2459–M.

**1. Carriers ⬅413(1)—As regards right to recover loss from sleeping car company, woman's articles of personal adornment are "baggage."**

Articles of personal adornment of a woman passenger are "baggage," which she has the right to keep in her personal possession, as regards right to recover loss from sleeping car company.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Baggage.]

**2. Carriers ⬅413(2)—Duty of sleeping car company is to keep a continuous watch in its cars at night.**

It is the duty of a sleeping car company to maintain a continuous watch in its cars at night while passengers are asleep.

**3. Carriers ⬅413(3)—Sleeping car company held liable to woman passenger for jewelry stolen during the night from her berth.**

Sleeping car company *held* liable to a woman passenger for the value of jewelry which, on retiring, she placed in a handbag and under her clothing in the net provided for the purpose, and which was stolen during the night; it being shown that the porter of the car slept in the smoking room for four hours, leaving no one on watch, except for occasional brief visits of the conductor and the porter of the next car.

**4. Carriers ⬅413(4)—Passenger in sleeping car, whose jewelry was stolen from her berth during the night, held not chargeable with contributory negligence.**

Woman passenger in sleeping car, whose jewelry was stolen from her berth during the night, *held* not chargeable with contributory negligence because she placed it with her clothing in the receptacle provided by the company for use of occupants of the berth.

At Law. Action by Jessie Cook Wilkinson and C. J. Wilkinson against the Pullman Company. Judgment for plaintiffs.

Clarke & Bowker and James E. Neville, all of Los Angeles, Cal., for plaintiffs.

E. W. Camp and Robert Brennan, both of Los Angeles, Cal., for defendant.

McCORMICK, District Judge. This is an action at law, wherein jury was waived, to

recover $4,100, being the value of jewelry lost by plaintiff Jessie Cook Wilkinson while she and her husband, the coplaintiff, were passengers and guests for hire in one of the standard sleeping cars of defendant company on an overnight journey en route from San Buenaventura, Cal., to San Francisco, Cal., over the coast line of the Southern Pacific Railway Company, and thence to Honolulu, Hawaiian Islands. Diversity of citizenship of the parties and jurisdictional amount in controversy brings this case to this court.

The complaint substantially avers that, while the plaintiffs were asleep in the section of the sleeping car which they had rented from the defendant company and to which they had been regularly assigned by its agents, Mrs. Wilkinson's handbag, containing her personal adornments of valuable rings, bracelets, and broach, which was part of her baggage appropriate to said journey to Honolulu, was stolen from the place in said section where she had placed them in a secure manner upon retiring for the night. It is alleged that the theft and removal of the property was the result of negligence of defendant company in not keeping a constant and active watch of said Pullman car wherein and while plaintiffs were occupants and asleep.

The answer denies any negligence of defendant, and denies all of the allegations of the complaint, including those that the property was stolen. There is no affirmative defense pleaded.

The evidence established that Mrs. Wilkinson was a woman of means in her own right, owning property to the approximate value of $200,000, and that it was her custom to wear as personal adornment jewelry and diamonds of considerable value on visits to San Francisco, Los Angeles, and elsewhere. Her home was in San Buenaventura, Cal., and about 8:30 o'clock on the night of January 4, 1926, with her husband, she boarded Pullman sleeping car No. 1 attached to Southern Pacific train running between Los Angeles and San Francisco. They were leaving on a vacation and pleasure trip to Honolulu.

They had paid the required fare and Pullman charges for a section in said car, and were assigned to section 10 thereof. They did not occupy the upper berth, but both retired in the lower berth, as Mrs. Wilkinson was nervous and did not want to be alone. The upper berth was vacant. Their section was on the left-hand side of the train as it proceeded northerly to San Francisco. They both retired when the train was at or near Santa Barbara, at about 10 o'clock, but did

not fall asleep until after the train passed Pismo Crossing, which was reached about midnight. Both remained asleep until after the train had gone over the mountains beyond San Luis Obispo and near Santa Margarita, when they were awakened by the application of the air brakes as the train proceeded down hill. However, they continued to nap along until about 6 a. m., when Mr. Wilkinson arose, partly dressed himself in the berth, completed his attire in the men's dressing room, and returned to the berth, in which Mrs. Wilkinson was sitting up, whereupon she exclaimed to her husband, "My bag is gone!" A very thorough search was made of the berth and the car for the missing bag and jewelry, but neither was found.

It was further shown that about 10:30 p. m. on the night in question, just after the train left Santa Barbara, the porter of car No 1. retired to the smoking room of the car and remained asleep therein until about 2 a. m. the following morning, when he resumed his duties as porter in the car. During the time he slept there was no employee or agent continually on watch in car No. 1. The only watch over such car during approximately these four hours was the intermittent visits of the porter of the adjoining Pullman car, who periodically went into the car for "about a minute or half a minute" to see that everything was all right and to answer any rings that were registered, and the visits of the Pullman conductor, who was in charge of the five Pullman cars of the train, and who about every ten or fifteen minutes during such four hours went into car No. 1 and observed the conditions therein.

There was no definite evidence as to how often either of these employees visited the car during the time when its porter was sleeping, and it is also uncertain as to how long on the visits of either he remained in the car. It was established that at no time did either observe any one in the aisle, or in the vicinity of plaintiffs' section, or any other unusual condition. The train made several regular stops for passengers after the plaintiffs boarded it and before it arrived at its destination, including a stop at San Luis Obispo, where, however, no one was seen to board car No. 1. It was a night train, which left Los Angeles in the evening, and arrived at San Francisco the following morning.

Twenty days after the loss of the handbag and jewelry, one Forbes, a business man of San Luis Obispo, while hunting squirrels about a mile or so north of San Luis Obispo, found Mrs. Wilkinson's handbag, containing several of her belongings which she had placed there, including one of her platinum bracelets set with precious stones. The bag, with its contents, was lying inside the right of way fence on the right-hand side of the Southern Pacific Railway. This was the opposite side from the section which plaintiffs occupied in the car. The handbag was not soiled, and did not present any indications of having been forcefully thrown upon the ground. It and contents were returned to the plaintiffs by Mr. Forbes. The testimony showed that the articles which are the basis of this action were not in the handbag when it was picked up.

Mrs. Wilkinson testified that when she disrobed in the berth, upon retiring for the night, she, following her invariable habit, removed her rings from her fingers and her necklace and breastpin from her person, and that she wrapped them in a handkerchief and placed the handkerchief and contents in her handbag, which she then placed in the bottom of a small mesh hammock, which the defendant's employees had stretched lengthwise on the inside of the berth, and which is part of the regular equipment and receptacles of the standard Pullman sleeping cars for the use of its patrons. On top of the handbag she placed her underwear. At no time after so doing did she leave the berth until after she discovered her loss on the following morning. When she awakened, she found her undergarments folded just as she had left them and apparently undisturbed, but her handbag with its valuable contents was gone. The evidence showed that neither of the plaintiffs knew or thought that the property had been taken until Mrs. Wilkinson's discovery in the morning at about 6 o'clock. No one was seen to take it. No one was seen around or near the berth at any time after the Wilkinsons had retired. No passengers were seen to board the car when it stopped at San Luis Obispo. The Wilkinsons were the last passengers in the car to retire.

In my opinion, no other finding is justifiable, under the evidence in this case, than that the handbag and its contents were stolen from the net receptacle in the section of plaintiffs somewhere between Pismo Crossing and Santa Margarita, and while plaintiffs were both asleep in their rented and assigned berth in defendant's sleeping car. This is the only reasonable inference deducible from the positive uncontradicted testimony of the Wilkinsons and the physical and geographical facts shown by the finding of the handbag, as well as the movements of the train and the situa-

tion of the Pullman employees during the night in question. The larceny was committed by some unknown person. Any other conclusion under the record would be conjecture. It is true that some of the physical facts disclosed by the record cast doubt upon this position. But one must disbelieve or discredit the positive sworn statements of Mrs. Wilkinson in order to find that her jewelry was not stolen from the berth while she was asleep in it. She appeared to be a credible witness, who testified truthfully on matters within her knowledge; and her testimony as to her conduct and movements on the night in question cannot be arbitrarily rejected. It would be conjecture to make any other finding.

[1] The jewelry that Mrs. Wilkinson was wearing and carrying in the car is regarded as baggage, within the definition of that term as it is used in cases of this kind. She had the right to carry with her, and retain under her personal possession and in her immediate presence and control as baggage, a reasonable quantity of personal effects for her use, comfort, and adornment during her journey, having in view her station in life. Bacon v. Pullman Co. (C. C. A. 5) 159 F. 1, 16 L. R. A. (N. S.) 578, 14 Ann. Cas. 516; Metz v. California Southern Railroad Co., 85 Cal. 329, 24 P. 610, 9 L. R. A. 431, 20 Am. St. Rep. 228.

The rule of law applicable in this case is aptly stated in 5 Ruling Case Law, p. 799, as follows: "A high degree of care and watchfulness is imposed upon a sleeping car company for their sleeping guests, and they are rightfully held to a due and faithful discharge of the obligations thus assumed. They may, therefore, be held liable for theft which is of frequent occurrence. In this respect it is said that a sleeping car company is bound to have an employee charged with the duty of carefully and continually watching the interior of the car while berths are occupied by passengers; and where servants are found asleep in the early morning, this is such evidence of negligence as may warrant a recovery for losses suffered by a passenger who was robbed while asleep."

It is true that the degree of care required of sleeping car companies for the safety, comfort, and convenience of its patrons has not been uniformly established in all of the adjudicated cases, but my examination of the authorities convinces me that such companies are at all times required to use ordinary care and that such ordinary care has relation to the particular time, place, and persons in the specific case under consideration. As the

court said in the early case of Woodruff Sleeping & Parlor Coach Co. v. Diehl, 84 Ind. 474, 43 Am. Rep. 102: "While it may be true that a sleeping car company is not liable either as an innkeeper or common carrier, yet it cannot be held that the company is not responsible to an occupant of a berth in its car for the loss of his personal goods and money resulting from such negligence as was shown by the facts in this case."

[2, 3] It seems to me that it is the duty of a sleeping car company to so arrange the hours of duty of its employees that, while passengers are asleep in their berths during the night, a continuous and careful watch of the interior of the car will be maintained. The failure to maintain such watch constitutes negligence, and, if personal effects and baggage of its passengers be stolen because of the failure to maintain such watch, the passenger so losing his property may recover from the sleeping car company the value of the property so lost. On an overnight journey, such as the one the plaintiffs took, in a train that made numerous stops for passengers, as the train in question did, there should be at all times during the night some employee awake and attentive to the safety and comfort of the passengers and the security of their property within the sleeping car.

It is in reliance upon the sleeping car company's maintaining such safeguards for their comfort and security that the traveler is induced to pay the additional charge and obtain the accommodations in the sleeping car. And to establish a rule of law that would excuse the sleeping car company from maintaining a continual watch in its car while its patrons were asleep therein at night would in my opinion not only be dangerous, but would tend to defeat the very purpose for which the patron engages accommodations in such car. Railroad sleeping cars are patronized by the public on night journeys for sleep and rest, and ordinary care on the part of the sleeping car company requires that such purposes be made secure and comfortable, and to this end there should be some employee always on watch in the car during the night. In this case, at the time the jewelry was stolen and taken from the Wilkinson berth, its occupants and the Pullman porter of such car were asleep, and no other person was exercising any sufficient or reasonable surveillance of the interior of said car. These facts establish negligence of defendant company. Campbell v. Pullman Car Co. (C. C.) 42 F. 484; Hill v. Pullman Co. (C. C.) 188 F. 497; Culbreth v. Pullman Co. (D. C.) 293 F. 402.

[4] It is urged by defendant that Mrs. Wilkinson was guilty of contributory negligence, which should bar a recovery in this action. It is doubtful whether such defense can be interposed herein. It is not pleaded. It is an affirmative defense. Assuming that such defense is available to defendant herein, there is nothing that in my opinion establishes contributory negligence, so as to defeat a recovery by the plaintiffs. I have already discussed the right of Mrs. Wilkinson to carry her jewelry and personal adornment as baggage on the journey, and it cannot be said that because she utilized a receptacle in her berth, placed therein by defendant for the convenience and use of an occupant, such conduct was the proximate cause of her loss. The proximate and efficient cause of her loss in my opinion was the failure of defendant company to maintain a continual watch over the interior of the car in which she and her husband were asleep.

In accordance with the foregoing views, I have made and filed herein the findings of fact and conclusions of law submitted by plaintiffs' counsel, pursuant to which plaintiffs will have judgment against defendant company for $4,100 and costs of suit.